United States District Court
Southern District of Texas
FILED

AUG 2 5 2004

Michael N. Milby
Clerk of Court

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| FEBRIONA VIERA ESCOBEDO | § | |
| INDIVIDUALLY AND AS | § | |
| REPRESENTATIVE OF THE ESTATE | § | |
| OF JOSE ANGEL ESCOBEDO | § | |
| RODRIGUEZ, DECEASED; AND | § | CIVIL ACTION |
| LUIS ALBERTO ESCOBEDO VIERA, | § | |
| JOSE VIERA ESCOBEDO and | § | |
| JOSE ANGEL ESCOBEDO, JR. | § | |
| **Plaintiffs,** | § | |
| | § | |
| V. | § | NO. B-03-135 |
| | § | |
| FORD MOTOR COMPANY, | § | |
| FORD NORTH AMERICA, INC. | § | |
| AND WALMART STORES, INC. | § | |
| D/B/A SAM'S WHOLESALE CLUB | § | |
| **Defendants.** | § | |

## DEFENDANT FORD MOTOR COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT MOTION REGARDING PLAINTIFFS' PUNITIVE DAMAGES

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Defendant Ford Motor Company, Inc., ("Ford") hereby moves this Court to enter partial summary judgment in its favor because plaintiffs cannot produce any evidence establishing a genuine issue as to any material fact. Plaintiffs cannot produce any evidence to support their punitive damages claim. This motion is brought pursuant to Fed.R.Civ.P. 56 and is supported by the accompanying Memorandum of Points and Authorities.

/ / /

/ / /

/ / /

/ / /

/ / /

::ODMA\PCDOCS\PHX\183519\1

1

RESPECTFULLY SUBMITTED this 25th day of August, 2004.

RODRIGUEZ, COLVIN,
 CHANEY & SAENZ, L.L.P.
1201 East Van Buren
Brownsville, TX 78520
(956) 542-7441 - Telephone
(956) 541-2170 - Facsimile

By:  _____

Jaime A. Saenz
State Bar No. 17514859
ATTORNEYS    FOR    DEFENDANT
FORD MOTOR COMPANY

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    FACTUAL BACKGROUND

This lawsuit arises out of an accident that occurred on July 19, 2002. Complaint, ¶ 4.1. Juan Rangel Espinoza was driving a 1994 Ford Ranger ("Ranger") heading northbound on a highway. Complaint, ¶ 4.1. Jose Angel Escobedo was a passenger in the vehicle. The vehicle went out of control and rolled. Complaint, ¶ 4.1. As a result, Mr. Escobedo died. Complaint, ¶ 4.1. According to the driver, one of the rear tires detreaded, causing him to lose control and resulting in the roll over. *See* Deposition of Juan Espinoza, pp. 23 and 24, attached as Exhibit A. Apparently, the tire was put on the Ranger approximately three weeks prior to the accident. Exhibit A, p. 15. The tire came from a 1978, or thereabouts, station wagon that the driver's brother purchased in Mexico. Exhibit A, p. 14.

### II.   PROCEDURAL BACKGROUND

Plaintiffs sued Ford alleging the following claims regarding the 1994 Ford Ranger: 1) product liability claim; 2) negligence; 3) misrepresentation; and 4) willful acts or omissions, gross neglect, and malice. Ford filed its motion for summary judgment regarding plaintiffs' product liability, negligence, and misrepresentation claims.

### III.  LEGAL ARGUMENT

#### A.    A SUMMARY JUDGMENT MUST BE GRANTED IF THERE IS NO EVIDENCE TO SUPPORT PLAINTIFFS' CLAIM.

Ford seeks a no evidence motion for summary judgment based on Rule 166a(i) of the Texas Rules of Civil Procedure with regard to plaintiffs' punitive damages claims. The rule states as follows:

> After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. The motion must state the elements as to which there is no evidence. The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact. TEX. R. CIV. P. 166a(i).

Thus, the "no-evidence" summary judgment rule shifts the burden of proof from the movant to the non-movant, who now must present sufficient summary judgment evidence to create a material fact issue. *Macias v. Fiesta Mart, Inc.*, 988 S.W.2d 316, 317 (Tex. App.—Houston [1st Dist.] 1999, no pet.); *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). Plaintiffs cannot meet this burden of proof because they have no evidence, expert or otherwise, to prove that they are entitled to recover punitive damages from Ford.

### B.    ADEQUATE TIME FOR DISCOVERY HAS PASSED AND PLAINTIFFS DID NOT PROVIDE ANY EVIDENCE.

This case is ripe for a no-evidence motion. This case was filed on May 29, 2003. Substantial discovery including written discovery and numerous depositions have already occurred and trial is set on November 4, 2004. Plaintiffs' expert designation deadline expired on May 17, 2004.

During the written discovery, Ford propounded a second set of interrogatories. Interrogatory number 5 is specific to the punitive damages claim. Plaintiff Febriona Viera Escobedo's answer to interrogatory number 5 of Ford's second set of interrogatories states:

**INTERROGATORY NO. 5:**

Identify all documents that support your claim for punitive damages against Ford Motor Company.

**ANSWER**: Ford committed willful acts or omissions, gross neglect, and/or malice, which were a proximate cause of injuries and damages to Plaintiffs, including the death of Jose Angel Escobedo Rodriguez, and for which Plaintiffs are entitled to recover punitive damages, pursuant to §41.003(a)(2) and (3) of the Texas Civil Practice and Remedies Code and Article XVI, §26 of the Texas Constitution.

Plaintiffs have not and cannot produce any evidence to raise a genuine issue of material fact with regard to their claim that they are entitled to an award of punitive damages from Ford. Consequently, Ford is entitled to summary judgment on such claims.

### C. PLAINTIFFS HAVE NO EVIDENCE THAT FORD ACTED WITH MALICE.

To recover punitive damages, plaintiffs must plead and prove, by *clear and convincing evidence* that their injuries resulted from malice attributable to Ford. *See* TEX. CIV. PRAC. & REM. CODE §41.003(a)(3), (b); STATE BAR OF TEX., TEX. PATTERN JURY CHARGES PJC 4.2B (2002 ed.). To prove that Ford acted with malice with respect to plaintiffs, they must show that Ford acted with:

(A)    a specific intent to cause substantial injury to Plaintiffs; or

(B)    that Ford committed an act or omission:

   (i)    which when viewed objectively from Ford's standpoint at the time of its occurrence involves an extreme degree risk, considering the probability and magnitude of the potential harm to others; and

   (ii)    of which Ford had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

*See* Tex. Civ. Prac. & Rem. Code §41.001(7); Tex. Pattern Jury Charges PJC 4.2B.[1] In this case, plaintiffs have no evidence to satisfy any of the elements of malice. Summary judgment is therefore proper on plaintiffs' claims for punitive damages against Ford.

### 1. Punitive Damages Standard Adopted in *Moriel* and Codified in § 41.001 Requires Clear and Convincing Evidence of Both Objective and Subjective Components.

The Texas Supreme Court has long recognized that punitive damages (also referred to interchangeably as "exemplary damages") "are proper only in the most exceptional cases," *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 18 (Tex. 1994), and "only in those civil cases which are quasi-criminal in their nature," *P. J. Willis & Bro. v. McNeill*, 57 Tex. 465, 480 (1882); *accord, e.g., Moriel*, 879 S.W.2d at 20 n. 10 (noting

---

[1]    The Texas Legislature recently amended Chapter 41 of the Texas Civil Practice and Remedies Code. Act of June 2, 2003, 78th Leg., R.S., ch. 204, 2003 Tex. Sess. Law Serv. 847, 886-89 (Vernon). The amended statute now provides that, under §41.003, exemplary damages are recoverable when the harm to the claimant resulted from fraud, malice, or gross negligence. *Id.* §13.04, 2003 Tex. Sess. Law Serv. at 888. The element of malice was changed to eliminate the objective and subjective sub-parts of (B)(i)-(ii), above, and these sub-parts were relocated in the newly added definition of gross negligence. *Id.* §13.02(7), (11), 2003 Tex. Sess. Law Serv. at 887. These changes, however, do not affect this case because the new statute applies only to actions that were filed on or after September 1, 2003, which is the effective date of the act. *Id.* §23.02(a), (d), 2003 Tex. Sess. Law Serv. at 898-99.

"quasi-criminal nature of punitive damages"). Specifically, they are allowed only for "malicious or otherwise morally culpable conduct," *Id.* at 16-18, or "conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Owens-Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 41 (Tex. 1998) (quoting RESTATEMENT (SECOND) OF TORTS §908 (1979)).

The elements of a punitive-damages claim in Texas are codified in Texas Civil Practice and Remedies Code Chapter 41. Section 41.003(a) requires a plaintiff to prove, by clear and convincing evidence, that "the harm with respect to which the claimant seeks recovery of exemplary damages results from . . . malice."[2] Absent a specific intention to cause substantial injury (not alleged in this case), "malice" is an act or omission

> (i)     which when viewed *objectively* from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; *and*
>
> (ii)    of which the actor has actual, *subjective* awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety and welfare of others.

TEX. CIV. PRAC. & REM. CODE §41.001(7)(B) (emphasis added). This two-pronged test for "malice," with its subjective and objective elements, was drawn almost verbatim from the two-pronged test articulated by the Texas Supreme Court in *Moriel,* 879 S.W.2d at 23. Thus, the *Moriel* opinion helps form the proper interpretation of §41.001. *See Mobil Corp. v. Ellender,* 968 S.W.2d 917, 921 n. 2 (Tex. 1998).[3]

---

[2]  Section 41.003 also permits recovery of punitive damages if the harm resulted from "fraud," but there is no claim for punitive damages on that basis in this case.

[3]  When *Moriel* was decided, the standard for awarding punitive damages was described in terms of "gross negligence." Section 41.003 had substituted "malice" for "gross negligence," but §41.001 defined "malice" in the same way the Texas Supreme Court defined "gross negligence" in *Moriel.* Thus, as the Texas Supreme Court recognized in *Mobil Oil,* 68 S.W.2d at 921 n.2, the definition of "malice" in §41.001 "mirror[ed]" the definition of "gross negligence" in *Moriel,* and *Moriel's* "legal sufficiency review of gross negligence is relevant to legal sufficiency review of malice as redefined by section 41.001(7)(B)."

**2.    Ford is Entitled to Summary Judgment on Plaintiffs' Punitive Damage Claims Because Plaintiffs Cannot Establish the Objective Component of Such Claim.**

The objective prong of the *Moriel* standard requires plaintiffs to prove that Ford's acts or omissions created a risk of harm that, viewed from the perspective of a manufacturer or seller in Ford's position at the time of the acts or omissions, was "extreme." "Extreme" risk is a function of both the magnitude and the probability of the anticipated injury to the plaintiff. *Moriel*, 879 S.W.2d at 22. Moreover, "extreme" risk imposes a "threshold *significantly higher* than the objective 'reasonable person' test for negligence." *Id.* (emphasis added). As explained below, it follows from this that in product liability cases (1) "extreme" risk must also be a function of the burden or costs associated with adopting an alternative design to reduce the risk, and (2) a risk of injury posed by a product's design can be deemed "extreme" only if, considering those burdens and costs, reasonable manufacturers and sellers could not conclude that the product was reasonably safe.

The fact that a product is statistically certain to cause injury is not sufficient to establish that the risk is extreme. It is not sufficient to establish unreasonable risk, a lesser burden. *Every* product on the market creates *some* risk of serious injury or death. For most products, the injury rate is small and the probability that any individual user will suffer serious injury or death is minuscule. For mass-produced products sold to millions of consumers, however, even the tiniest injury rate results in a large number of actual injuries. The National Safety Council's annual publication of injury information in the United States shows literally thousands of annual injuries associated with, for example, shoes, coins, luggage, skateboards, sleds, hand saws, hammers, drills, pliers, wire cutters, wrenches, screwdrivers, batteries, household containers and packaging, bottles, jars, tableware, scissors, trash baskets, beds, tables, chairs, ladders, rugs, toilets, mirrors, bathtubs, showers, nails, screws, windows, refrigerators, irons, vacuum

cleaners, and fans, to name just a few. National Safety Council, Injury Facts 134 (1999 ed.).

But even though manufacturers of bicycles and skis (for example) know that their products cause thousands of injuries every year, no one would argue that it is negligent, much less malicious, to sell bicycles and skis. "The law of products liability does not guarantee that a product will be risk free, since most products have some risk associated with their use." *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 383-34 (Tex. 1995). It is not negligent to sell bicycles and skis (or automobiles) even though thousands of actual injuries from those products are statistically certain to occur, because the vast majority of citizens believe that the risk of injury is justified by the benefits provided by those products and the burden to society that would result if those products were not available.

The way the court applied the objective standard in *Moriel* to a case involving the bad faith denial of insurance benefits confirms that punitive damages cannot be awarded if there is any reasonable basis or justification for defendant's conduct. The court began by recognizing that "[d]efining the substantive standard for punitive damages in the context of a bad faith insurance dispute requires an examination of the relationship of a claim for punitive damages to the underlying claims for breach of contract and bad faith." Proof that an insurance company improperly denied a valid claim could suffice to prove the underlying breach of contract claim, but not the underlying bad-faith claim. Rather, proof of the underlying bad-faith claim required proof that the insurer knew that it had "no reasonable basis" for denying the claim:

> Evidence that merely shows a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith. Nor is bad faith established if the evidence shows the insurer was merely incorrect about the factual basis for its denial of the claim, or about the proper construction of the policy. A simple disagreement among experts about whether the cause of the loss is one covered by the policy will not support a judgment for bad faith. To the contrary, an insured claiming bad faith must prove that the insurer *had no reasonable basis* for denying or

delaying payment of the claim, and that it knew or should have known that fact.

879 S.W. 2d at 17-18 (emphasis added; citations, parenthetical quotation, and footnote omitted).

The *Moriel* jury found the defendant liable on the underlying bad-faith claim, thereby finding not only that Moriel's claim was valid, but that that the defendant had no reasonable basis for concluding otherwise. The defendant conceded that legally sufficient evidence supported the jury's findings on the underlying bad-faith claim. Thus, when the defendant argued on appeal that it should not be liable for punitive damages because it had a justification for its actions—it believed the claim was not valid—the Texas Supreme Court was able to reject this argument peremptorily:

> Transportation [the defendant] says it disputed coverage of the treatment expenses because it believed that Moriel's impotence was not work-related, but Transportation's reasons for delay are *irrelevant because it concedes for purposes of this appeal that legally sufficient evidence supports the jury's conclusion that it acted without any reasonable basis* and is thus liable for bad faith.

879 S.W.2d at 25 (emphasis added).

When applied to this case, *Moriel* establishes that punitive damages cannot be based on a bona fide dispute between Ford and its experts on the one hand, and plaintiffs' and their experts on the other. If these matters are fairly debatable—*i.e.*, if reasonable people can disagree concerning them—punitive damages are plainly inappropriate. Accordingly, a jury may consider awarding punitive damages in this case only if the risk associated with injuries caused in an accident of this nature, viewed from Ford's perspective prior to the accident in this case, was so extreme that no reasonable manufacturer considering the information available to Ford prior to the accident in this case could have concluded that the Ranger was reasonably safe.

It is plain that plaintiffs cannot hope to prove—by any evidence, let alone by clear and convincing evidence—that all reasonable persons in Ford's position necessarily would have concluded that the risk associated with the manufacture and sale of the Ranger was

unreasonable.  The evidence does not rise to a level that would enable reasonable and fair minded people to differ in their conclusion that Ford had a reasonable basis for their design decisions and manufacturing processes, even if the jury could conclude in hindsight that those decisions were wrong or that the processes in question were somehow inadequate. The question of whether plaintiffs can recover punitive damages is therefore not one of fact, but law.

### 3.   Ford is Entitled to Summary Judgment on Punitive Damage Claims Because Plaintiffs Cannot Establish the Subjective Component of their Claim.

For similar reasons, plaintiffs cannot satisfy the subjective component of the *Moriel* standard.  The subjective component requires clear and convincing proof that "the actor has actual, subjective awareness of the risk involved, but nevertheless proceed[ed] with conscious indifference to the rights, safety, or welfare of others."  This prong of the test "requires proof that the defendant had actual subjective knowledge of an extreme risk of serious harm" and acted in "conscious indifference" to that risk. *Moriel*, 879 S.W.2d at 22.  In product-liability cases, "one of the main factors supporting [proof of awareness and conscious indifference] . . . is the fact that the manufacturer is aware of specific design changes that would have made the product safer."  *Gen. Motors Corp. v. Sanchez,* 997 S.W. 2d 584, 597 (Tex. 1999).

A corporation, of course, is a fictional entity and cannot subjectively be aware of or consciously indifferent to anything.  "Corporations can, of course, 'act only through agents of some character.'"  *Hammerly Oaks v. Edwards*, 958 S.W.2d 387, 391 (Tex. 1997).  Indeed, Texas case law specifically precludes punitive damages against a corporation unless a (1) a "vice-principal" of the corporation is guilty of malice, (2) the corporation is malicious in hiring an unfit agent, or (3) the corporation ratifies or authorizes an agent's malicious conduct.  *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921-22 (Tex. 1998).  Therefore, punitive damages may not be awarded without proof, by clear and convincing evidence, that a "vice principal" with responsibility for the

Ranger's design or manufacture subjectively knew of the extreme nature of the risk and acted with conscious indifference—*i.e.*, subjectively concluded that a different design or different manufacturing process would have made the Ranger safer and, without any arguable justification, refused to use same. Plaintiffs cannot prove that *any* employee of Ford with responsibility for the design or manufacture of any aspect of the Ranger—vice principal or not—subjectively concluded that other designs or manufacturing processes would have made the Ranger safer. Because Plaintiffs presented no facts to substantiate the punitive damages claim, the claim should be dismissed.

### D.    LIMITATIONS ON PUNITIVE DAMAGES CLAIMS.

The Supreme Court has repeatedly stated that the Due Process Clause of the United States Constitution imposes a substantive limit on the amount of punitive damages. <u>BMW of North America, Inc. v. Gore,</u> 517 U.S. 559, 116 S. Ct. 1589 (1996). [citations omitted]. Although the Court has not laid down a test for "excessiveness," it has stated that the amount of the punitive damage awards should not be "greater than reasonably necessary to punish and deter." <u>Pacific Mut. Life Ins. Co. v. Haslip</u>, 499 U.S. 1, 22 (1991).

#### 1.    Extraterritorial punishment permitted under Texas's punitive damages scheme violates Ford's substantive due process rights.

By permitting extraterritorial punishment, Texas's punitive damages scheme violates Ford's substantive due process rights. In this case, Ford is a multi-national corporation doing business in every state in the United States. Its activities in other states yields revenues distinct from the revenues it earns from its activities in Texas. Moreover, Ford sells many products and services different from the Ranger involved in this case. If a Texas jury is permitted to consider punitive damages based upon all of Ford's activities outside Texas, it imposes extraterritorial punishment and applies Texas

law to activities that have no relation to Texas. This violates Ford's substantive due process rights. See e.g., Phillips Petroleum Co. v. Shutts, 472 U.S. 797 (1985).

> **2.   Texas's punitive damages scheme results in over-punishment**

Texas's punitive damages scheme also violates Ford's substantive due process rights by permitting juries to assess damages that are more than necessary to deter and punish. Haslip, 499 U.S. at 22 (holding that punitive damages violate due process guarantees if they over-punish). The possibility of repetitive punitive damages awards for the same actions is over-punishment.

Consequently, Texas's punitive damages scheme violates defendant's substantive due process rights by exposing Ford to the possibility of punitive damage awards that are more than what is reasonably necessary to punish and deter.

## E.   FORD IS PROTECTED BY THE COMMERCE CLAUSE

Texas law provides that evidence of a defendant's net worth is admissible during any subsequent proceeding to determine the amount of exemplary or punitive damages. Tex. Civ. Prac. & Rem. Code § 41.011(a)(6). This provision is expressly contrary to the Gore decision. See Gore, 517 U.S. 559. In Gore the United States Supreme Court concluded that a State, "does not have the power, however, to punish . . . [a defendant] for conduct that was lawful where it occurred and that had no impact on . . . [the State] or its residents." Id. at 573, 1598. The Court continued, "[t]he award must be analyzed in the light of the same conduct, with consideration given only to the interests of . . . [the State's] consumers, rather than those of the entire Nation." Id. at 574, 1598. Allowing a jury to punish Ford based on its wealth, rather than Ford's conduct within Texas, is impermissible.

As a large corporation, Ford is an "active participant in the national economy." See Id. at 585. Ford sells many products and services other than the Ranger which accounts for the bulk of its net worth. To allow a jury to consider all of Ford's profits from the sales of products and services not at issue in this lawsuit imposes an undue burden

on interstate commerce. <u>See</u>, <u>generally</u>, <u>Gibbons v. Ogden</u>, 22 U.S. 1 (1824) (the Commerce Clause prevents a state from imposing undue burdens on interstate commerce). It is improper to allow the State of Texas, through a jury following Texas jury instructions, to use punitive damages to affect lawful conduct in other states. The United States Supreme Court in <u>Gore</u> expressly stated that "a State may not impose economic sanctions on violators of its laws with the intent of changing the tortfeasors' lawful conduct in other states." <u>Gore</u>, 517 U.S. at 572. If this Court allows the jury to consider Ford's wealth, net worth, total income, assets or profits from sales outside of Texas, it will impose an unconstitutional sanction on Ford.

## IV. CONCLUSION

In order to sustain the punitive damages claim, Plaintiffs have the burden of producing clear and convincing factual evidence that Ford acted with malice. Plaintiffs have not met this burden. Further, Texas's system for imposing punitive damages is unconstitutional. For these reasons, summary judgment regarding the punitive damages claim should be granted.

**RESPECTFULLY SUBMITTED** this 25 day of August, 2004.

Rodriguez Colvin, Chaney & Saenz, L.L.P.
1201 East Van Buren
Brownsville, TX 78520
(956) 542-7441 - Telephone
(956) 541-2170 - Facsimile

By:_____
    Jaime A. Saenz
    State Bar No. 17514859

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all known counsel of record as set forth below in compliance with the Federal Rules of Civil Procedure on this _2 5_ day of August, 2004.

Mikal C. Watts
Ray R. Marchan
WATTS LAW FIRM, L.L.P.
1926 Elizabeth
Brownsville, TX  78520

Tom Bullion
Brown McCarroll, L.L.P.
111 Congress Avenue, Suite 1400
Austin, TX  78701

Jaime A. Drabek
Drabek & Associates
1720 E. Harrison, Suite B
Harlingen, Texas 78550