United States District Court
Southern District of Texas
ENTERED

OCT 2 5 2004

Michael N. Milby, Clerk of Court
By Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# —BROWNSVILLE DIVISION—

| | | |
|---|---|---|
| FEBRIONA VIERA ESCOBEDO, | § | |
| Individually and as Representative | § | |
| of the Estate of Jose Angel Escobedo | § | |
| Rodriguez, Deceased; and LUIS | § | |
| ALBERTO ESCOBEDO VIERA, | § | |
| JOSE VIERA ESCOBEDO and | § | |
| Jose Angel Escobedo, Jr., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL NO. B-03-135 |
| | § | |
| FORD MOTOR COMPANY, | § | |
| MICHELIN NORTH AMERICA, INC., | § | |
| and WALMART STORES, INC., d/b/a | § | |
| SAM'S WHOLESALE CLUB, | § | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Defendant Ford Motor Company ("Ford") seeks summary judgment on various claims, some

of which are specifically alleged in the Second Amended Petition filed by Plaintiffs' Febriona

Viera Escobedo, Individually and as Representative of the Estate of Jose Angel Escobedo

Rodriguez, Deceased; Luis Alberto Escobedo Viera, Jose Viera Escobedo, and Jose Angel

Escobedo, Jr. ("Plaintiffs"), and some of which Plaintiffs do not explicitly plead in their Petition.

Before the court are the following motions filed by Ford: 1) Motion for Partial Summary

Judgment on the issue of a post-sale duty to recall or warn claim; 2) Motion for Partial Summary

Judgment on the issue of a misrepresentation claim; 3) Motion for Partial Summary Judgment on

the issue of a punitive damages claim; and 4) an overall Motion for Summary Judgment. Ford's

partial summary judgment motions on the issues of a post-sale duty to warn or recall and the

misrepresentation claim were filed on June 10, 2004, and its partial summary judgment on

Plaintiffs' punitive damages claim and its overall summary judgment motion were filed on August 25, 2004. Plaintiffs never responded to any of Ford's motions. After a thorough review of the summary judgment evidence, the pleadings, the briefs, and the applicable law, for the reasons elaborated below, the court hereby **GRANTS** Ford's partial summary judgment motions pertaining to the post-sale duty to recall or warn claim, the misrepresentation claim, and the punitive damages claim. The court also **GRANTS** Ford's overall summary judgment motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a single vehicle rollover accident that occurred on or about July 19, 2002. Plaintiffs are the survivors and heirs of Jose Angel Escobedo Rodriguez ("Escobedo"). Escobedo was a passenger in a 1994 Ford Ranger driven by Juan Rangel Espinoza ("Espinoza"), the owner of the vehicle.[1] Plaintiffs originally filed suit on May 29, 2003, in the 357th Judicial District in Cameron County, Texas, alleging sundry products liability and negligence claims against Ford, the manufacturer of the Ford Ranger; Michelin North America, Inc., the manufacturer of the Ford Ranger's tires; and Walmart Stores, Inc., d/b/a Sam's Wholesale Club ("Walmart"), the entity that Plaintiffs allege sold the tires that were on the Ford Ranger at the time of the accident.[2] Walmart removed the case to federal court on July 31, 2003, on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. Though Ford moved for partial summary

---

[1] Plaintiffs' Second Amended Petition refers to the vehicle at issue as both a Ford Ranger XLT and as a Ford Ranger Pickup. See, e.g., Second Amended Petition at ¶ 4.1, ¶ 7.1.

[2] Walmart filed a separate Motion for Summary Judgment wherein it averred that Plaintiffs incorrectly identified it as Walmart rather than its correct name of Sam's East, Inc. and that it was entitled to summary judgment because Plaintiffs proffered no evidence demonstrating it was the seller of the Ford Ranger's tires. For the reasons set forth in an opinion issued on October 22, 2004, the court granted Walmart's motion.

judgment and summary judgment, to date, Plaintiffs have never responded to any of Ford's motions.

## II. STANDARD OF REVIEW

At the outset, this court notes that, although Plaintiffs have never responded to Ford's motions, a motion for summary judgment cannot be granted simply because there is no opposition—despite the court's admonition described below—even if the failure to oppose it violates a local rule. Hibernia Nat'l Bank v. Administracion Central Sociedad Anonima, 776 F.2d 1277, 1279 (5th Cir. 1985).[3]

Ford maintains in its various motions that it seeks partial summary judgment and summary judgment under a "no evidence" standard pursuant to both Rule 56 of the Federal Rules of Civil Procedure and Rule 166a(i) of the Texas Rules of Civil Procedure. Federal courts, however, apply state substantive law "when adjudicating diversity-jurisdiction claims, but in doing so apply federal procedural law to the proceedings." Cates v. Sears, Roebuck & Co., 928 F.2d 679, 687 (5th Cir. 1991); Hanna v. Plumer, 380 U.S. 460, 465-67, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Accordingly, Rule 56 of the Federal Rules of Civil Procedure governs the propriety of summary judgment in the present case, not Rule 166a(i) of the Texas Rules of Civil Procedure.

Moreover, though Ford characterizes its motions as "no evidence" motions, the concept of a

---

[3] At the Initial Pretrial and Scheduling Conference held on January 9, 2004—at which all counsel were present—the court reiterated that all opposed motions should be responded to as per the Southern District's local rules. The court stated, in pertinent part, that "[a]n unresponded to motion will be granted. Southern District rules require you to respond to motions, plus my theory or my attitude is that if you don't respond to a motion, you don't care about it, so it must not bother you too much, so I will grant an unresponded to motion." Transcript of Conference at 11. The court further noted that "[i]f you care about something, it's kind of like a bad Hallmark commercial, I think you ought to send me something telling me you care...." Id. at 11-12.

"no evidence" summary judgment neither accurately describes federal law nor has any particular import in the vernacular of federal summary judgment procedure. See Librado v. M.S. Carriers, Inc., No. Civ.A.3:02-CV-2095-D, 2004 WL 1490304, *4 n. 4 (N.D.Tex June 30, 2004) (unpublished opinion). Instead, federal law contemplates a shifting burden: the movant's burden is dependent upon whether it will have the burden of proof on the claim or the defense at trial. See Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Supreme Court has explained that a movant for summary judgment need not support its motion with evidence negating the opponent's case; rather, once the movant establishes that there is an absence of evidence to support the nonmovant's case, the burden shifts to the nonmovant to make a showing sufficient to establish each element as to which that party will have the burden at trial. Celotex, 477 U.S. at 322-25.

Summary judgment is appropriate when the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. See Fed.R.Civ.P. 56(c); Celotex ,477 U.S. at 323. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The proof must be of such quality that "a reasonable jury could return a verdict for the nonmoving party."

Anderson, 477 U.S. at 248.  "Where the record taken as a whole could not lead a rational trier of

fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita, 475 U.S. at

586-87.

Finally, the court will decide all reasonable doubts and inferences in the light most favorable

to the party opposing the motion.  Lemelle v. Universal Mfg. Corp., 18 F.3d 1268, 1272 (5th Cir.

1994).  With these standards in mind, the court addresses each of Ford's motions.

## III. DISCUSSION

### A. Ford's Partial Summary Judgment Motion on the issue of a Post-Sale Duty to Recall or Warn

Plaintiffs do not explicitly plead in their Second Amended Petition that Ford has a post-sale

duty to warn of dangers and/or defects arising after the sale of the Ford Ranger.  Nevertheless,

Ford moves for summary judgment on such a claim.  The court holds that, to the extent that

Plaintiffs attempt to premise a claim upon the theory of a post-sale duty to warn, that theory is

foreclosed because Texas courts generally do not recognize a post-sale duty to warn of product

dangers or defects arising after the sale.[4] McLennan v. American Eurocopter Corp., 245 F.3d

403, 430 (5th Cir. 2001); Syrie v. Knoll Intern., 748 F.2d 304, 311 (5th Cir. 1984) (no "cause of

action for a failure to warn about hazards discovered after a product has been manufactured and

sold."); Ford Motor Company v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004) ("A plaintiff must

---

[4] Carved from this rule is the narrow exception—which is inapplicable to the present case—that, where the manufacturer regains a significant degree of control over a product and the product is determined to be defective during that period of control but fails to remedy that defect before it is resold, the manufacturer can be held liable for damages arising from that defect under a post-sale liability theory.  See Dion v. Ford Motor Co., 804 S.W.2d 302, 311 (Tex.App.—Eastland 1991, writ denied); Bell Helicopter Co. v. Bradshaw, 594 S.W.2d 519, 528-31 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.).

prove that the product was defective when it left the hands of the manufacturer and that the

defect was a producing cause of the plaintiff's injuries."); General Motors Corp. v. Saenz, 873

S.W.2d 353, 356 (Tex. 1993) ("The determination of whether a duty to warn exists is made as of

the time the product leaves the manufacturer.").

Ford anticipates that Plaintiffs will attempt to create a post-sale duty to warn of defects

pertaining to the Ford Ranger based upon the Motor Vehicle Safety Act ("Safety Act"), 49

U.S.C. § § 30101-60. Specifically, Ford maintains that Plaintiffs will argue that Ford had a duty

to notify the National Highway Traffic & Safety Association ("NHTSA") about the Ford

Ranger's alleged defects, and, had Ford notified the NHTSA of same, the NHTSA would have

ordered a recall and no injury would have occurred. Ford, relying upon Namovicz v. Cooper Tire

& Rubber Co., 225 F.Supp.2d 582 (D.Md. 2001), contends that Plaintiffs' claim is completely

preempted by the Safety Act.

Ford's argument pertaining to the Safety Act is somewhat confusing and, at times, suggests

that the Safety Act precludes all state law claims brought by Plaintiffs predicated upon violation

of the statute, not just a post-sale duty to recall. Ford, however, specifically moves this court to

grant summary judgment in its favor only on the issue of a post-sale duty to recall or warn claim.

This court therefore need not and does not reach the issue of whether the Safety Act completely

preempts all state law causes of action for violations of that statute.

The court, however, does note that Ford cites no Fifth Circuit opinion supporting its

argument, and this court's diligent search uncovers no such case. Moreover, the court observes

that Ford's reliance upon Namovicz is somewhat misplaced. Almost every court that has

addressed the issue whether the Safety Act completely preempts all claims relating to motor

6

vehicle safety holds, contrary to <u>Namovicz</u>, that it does not.[5]  <u>See, e.g.</u>, <u>Pokorny v. Ford Motor Co.</u>, 902 F.2d 1116, 1121 (3rd Cir. 1990); <u>Burgo</u>, 183 F.Supp.2d at 690; <u>Campbell</u>, 19 F.Supp.2d at 1273; <u>Richards v. Michelin Tire Corp.</u>, 786 F.Supp. 959, 962-63 (S.D.Ala. 1992); <u>Coardes v. Chrysler Corp.</u>, 785 F.Supp. 480, 482 n. 3 (D.Del. 1992); <u>Amrhein v. Quaker Oats Co.</u>, 752 F.Supp. 894, 896-97 (E.D.Mo. 1990); <u>In re Ford Motor Co. Crown Victoria Police Interceptor Products Liability Litigation</u>, No. 1:02CV15000, 2004 WL 1170145, *2 (N.D.Ohio May 19, 2004) (unpublished opinion); <u>Talalai v. Cooper Tire & Rubber Co.</u>, No. 00CV5694AJL, 2001 WL 1877265, *8 (D.N.J. Jan. 8, 2001) (unpublished opinion); <u>Beatty v. Bridgestone/Firestone, Inc.</u>, No. Civ.A. 00-4949, 2000 WL 1570590, *3 (E.D. Pa. Oct. 19, 2000) (unpublished opinion).

This court also observes that Plaintiffs in their Second Amended Petition allege that Ford's acts of negligence include, but are not limited to:

- Failing to comply with applicable and necessary Federal Motor Vehicle Safety Standards;

- Failing to notify consumers, as required by law, that a defect existed in the vehicle that related to public safety (negligence per se, 49 USC § § 30118-30119); and

- Failing to recall the vehicle or, alternatively, retrofitting the vehicle to enhance safety (negligence per se, 49 U.S.C. § § 30118-30119)

Second Amended Petition at ¶ 8.2.  To the extent that Plaintiffs are attempting to litigate the

---

[5] Courts disinclined to follow <u>Namovicz</u> have noted that the court's preemption analysis never inquired as to congressional intent or the Safety Act's savings provisions.  <u>See, e.g.</u>, <u>Burgo v. Volkswagen of America</u>, 183 F.Supp.2d 683, 688-89 (D.N.J. 2001);  <u>Campbell v. General Motors Corp.</u>, 19 F.Supp.2d 1260, 1273 (N.D.Ala. 1998).  Subsection 30103(e) of the Safety Act provides that "[c]ompliance with a motor vehicle safety standard prescribed under this chapter does not exempt a person from liability at common law, 49 U.S.C. § 30103(e), and Subsection 30103(d) preserves state law warranty obligations in addition to other rights and remedies provided by state law.  <u>Id.</u> at § 30103(d).

issue of motor vehicle recalls or a violation of the Safety Act, they are precluded from bringing a federal cause of a action.  The Safety Act does not afford private citizens a federal cause of action for safety related defects or a private right to a recall remedy. See Burgo,183 F.Supp.2d at 688-89; Campbell, 19 F.Supp. at 1274; In re Ford Motor Co. Crown Victoria, 2004 WL 1170145 at *6;  Ecker v. Ford Motor Co., No. CV0206833SVWTJLX, 2002 WL 31654558, *5 (C.D.Cal. Nov. 12, 2002) (unpublished opinion); Carden v. Bridgestone/Firestone, Inc., No. 00-3017-CIV, 2000 WL 33520302, *4 (S.D.Fla. October 18, 2000) (unpublished opinion).  Under the Act, the Secretary of Transportation is empowered to issue a recall order,  see 49 U.S.C. §§ 30118(b) & 30121(a), and the Attorney General of the United States may bring a civil action in the federal district courts to enjoin violations of the Act and the sale of motor vehicles that do not comply with the Act's requirements. Id. at § 30163(a).

## B. Ford's Partial Summary Judgment Motion on the Issue of Plaintiffs' Misrepresentation Claim

Ford is entitled to summary judgment on Plaintiffs' misrepresentation claim.  Plaintiffs allege in their Second Amended Petition that:

> Ford misrepresented the character and quality of the Ford Ranger Pickup.  The misrepresentations were of such a nature as to render Ford strictly liable for the injuries and damages to Plaintiffs, including the death of JOSE ANGEL ESCOBEDO RODRIGUEZ.  Ford engaged in the course of advertising, marketing, and promoting this line of vans, including the Ford Ranger Pickup in question.  Ford made false representations that included express and implied misrepresentations of material fact concerning the character and quality of the product and materials used in constructing the vehicle in question.  The misrepresentations were made through advertising, marketing, and promoting the product, the totality of which, taken as a whole, falsely misrepresented that the product was safe for use in a manner indicated by Ford to be suitable for consumers such as Plaintiffs.

Plaintiffs' Second Amended Petition at ¶ 9.1.

In products liability cases, misrepresentation claims are governed by Section 402B of the Restatement (Second) of Torts, which the Supreme Court of Texas has incorporated into the state's substantive law. Crocker v. Winthrop Laboratories, 514 S.W.2d 429, 431 (Tex. 1974). Section 402B provides as follows:

> One engaged in the business of selling chattels who, by advertising labels, or otherwise, makes to the public a misrepresentation of a material fact concerning the character or quality of a chattel sold by him is subject to liability for physical harm to a consumer of the chattel caused by justifiable reliance upon the misrepresentation, even though
> > a) it is not made fraudulently or negligently, and
> > b) the consumer has not bought the chattel from or entered into any contractual relation with the seller.

Restatement (Second) of Torts, Section 402B. The Fifth Circuit has expressed its understanding of the scope of Texas law pertaining to Section 402B as "cover[ing] only affirmative or express misrepresentations." Rehler v. Beech Aircraft Corp., 777 F.2d 1072, 1077 (5th Cir. 1985) (relying on Franks v. National Dairy Prods. Corp., 282 F.Supp. 528, 533 (W.D.Tex. 1968), aff'd, 414 F.2d 682 (5th Cir. 1969) and Bristol-Myers Co. v. Gonzales, 548 S.W.2d 416, 425 (Ct.Civ.App.—Corpus Christi 1976), rev'd on other grounds, 561 S.W.2d 801 (Tex. 1978)).

Plaintiffs identify no misrepresentation by Ford upon which their claim is predicated and proffer no evidence of "justifiable reliance upon the misrepresentation." Consequently, Plaintiffs fail to produce evidence sufficient to hold Ford liable under Section 402B, and summary judgment as to Plaintiffs' misrepresentation claim is therefore warranted.

**C. Ford's Partial Summary Judgment Motion on Plaintiffs' Punitive Damages Claim**

Summary judgment on Plaintiffs' punitive damages claim is likewise appropriate. The summary judgment record contains Plaintiff Febriona Viera Escobedo's answer to interrogatory

number 5 of Ford's second set of interrogatories, which provides as follows:

> INTERROGATORY NO. 5:
>
> Identify all documents that support your claim for punitive damages against Ford Motor Company.
>
> ANSWER: Ford committed willful acts or omissions, gross neglect, and/or malice, which were a proximate cause of injuries and damages to Plaintiffs, including the death of Jose Angel Escobedo Rodriguez, and for which Plaintiffs are entitled to recover punitive damages, pursuant to § 41.003(a)(2) and (3) of the Texas Civil Practice and Remedies Code and Article XVI, § 26 of the Texas Constitution.[6]

Chapter 41 of the Texas Civil Practice & Remedies Code that was in effect at the time

Plaintiffs' claim accrued defines "malice" as

> (A) a specific intent by the defendant to cause substantial injury to the claimant; or
> (B) an act or omission:
> (i) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability of the potential harm to others; and
> (ii) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(7) (Vernon 1997). Plaintiffs must prove by

clear and convincing evidence that their injuries resulted from malice attributable to Ford. Id. at §

41.003(a)(3).

At the time Plaintiffs' cause of action accrued, "gross negligence" was defined by the

Supreme Court of Texas in Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 18 (Tex. 1994), in the

exact way that "malice" was later defined in Section 41.001(7). Consequently, this court's legal

---

[6] Ford did not attach to its partial summary judgment motion interrogatory number 5 as an exhibit for the court's inspection, but rather reiterated its text therein. The interrogatory, however, is attached to Ford's overall summary judgment motion.

sufficiency review of malice is relevant to the legal sufficiency review of gross negligence, too. See Mobil Corp. v. Ellender, 968 S.W.2d 917, 921 n. 2 (Tex. 1998) (noting that the definition of "malice" in Section 41.001(7)(B) mirrored the definition of "gross negligence" in Moriel and that Moriel's "legal sufficiency review of gross negligence was relevant to the legal sufficiency review of malice as redefined by Section 41.001(7)(B).").

The objective prong of malice requires an "extreme degree of risk," which is not a remote possibility of injury or even a probability of minor harm, but rather the likelihood of serious injury to a plaintiff. Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 785 (Tex. 2001). The subjective prong requires "actual awareness," which means the defendant knew about the peril and its acts or omissions demonstrated it did not care. Id. Evidence of malice is legally sufficient if, considered as a whole in the light most favorable to the prevailing party, it rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. Gen. Motors Corp. v. Sanchez, 997 S.W.2d 584, 595 (Tex. 1999).

For a corporation to be liable for punitive damages, the acts or omissions of the corporation itself must have been committed with malice. Mobil Oil Corp. v. Ellender, 968 S.W.2d 917, 921 (Tex. 1998). A corporation acts with malice and is liable for punitive damages if 1) the corporation itself committed the acts or omissions with malice; 2) the corporation authorized or ratified an agent's malicious acts or omissions; 3) the corporation is malicious in hiring an unfit agent; or 4) the corporation committed malice through actions or inactions of a vice principal. Id. at 921-22. A corporation is also liable for punitive damages if it authorizes or ratifies an agent's gross negligence, if it is grossly negligent in hiring an unfit agent, or if it commits gross negligence through the actions or inactions of a vice principal. Id. at 922. Vice principals are:

11

> (a) corporate officers;
> (b) those who have authority to employ, direct, and discharge servants of the master;
> (c) those engaged in the performance of nondelegable or absolute duties of the master; and
> (d) those to whom the master has confided the management of the whole or a department or a division of the business.

Id.

Plaintiffs do not meet their burden under Section 41.003 of the Texas Civil Practice and Remedies Code and, therefore, are not entitled to a punitive damages award. Plaintiffs proffer no evidence to support the subjective component, i.e., that Ford—or any of its agents or vice principals—knew its conduct involved an extreme risk or was consciously indifferent to that risk. Plaintiffs' allegations of a misrepresentation on the part of Ford are merely conclusory. "[C]onclusory allegations, speculations, and unsubstantiated assertions are inadequate to satisfy [Plaintiffs'] summary judgment burden." Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996). Summary judgment in favor of Ford on the issue of Plaintiffs' punitive damages claim is therefore granted.

### D. Ford's Summary Judgment Motion

### 1. Stability Claim

Ford moves for summary judgment on the issue of Plaintiffs' "stability claim," contending that Plaintiffs' counsel conceded in a letter that Plaintiffs are not pursuing such a cause of action.[7] In support of its contention, Ford attached to its motion as an exhibit a second page of a

---

[7] Plaintiffs allege in their Second Amended Petition that the defective nature of the Ford Ranger included defects in stability. Second Amended Petition at ¶ 7.3. For instance, Plaintiffs plead that the Ford Ranger was "defective and inherently dangerous due to its general vehicle design parameters that cause[ed] the vehicle to experience handling and rollover instability under ordinary emergency avoidance and driving conditions." Id. at ¶ 7.4(e).

12

letter. Ford's Motion at Exhibit B. This letter, however, was not written by Plaintiffs' counsel. Jill S. Goldsmith, an attorney representing Ford, penned the letter, wherein she attempts to persuade Plaintiffs' counsel to dismiss the present case voluntarily because Plaintiffs have, *inter alia*, no viable stability claim. Id.

Nevertheless, even without the described letter, summary judgment is proper in this instance. As noted, Plaintiffs did not respond to Ford's overall motion for summary judgment or any of its partial summary judgment motions; therefore, the record contains only Plaintiffs' Second Amended Petition. "A summary judgment nonmovant who does not respond to the motion is relegated to [its] unsworn pleadings, which do not constitute summary judgment evidence." Bookman v. Shubzda, 945 F.Supp. 999, 1002 (N.D.Tex. 1996) (citing Solo Servce Corp. v. Westowne Assocs., 929 F.2d 160, 165 (5th Cir. 1991)). Consequently, the record contains no proof to support Plaintiffs' claims with respect to the stability of the Ford Ranger. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita, 475 U.S. at 586-87. Summary judgment is therefore warranted.

### 2. Roof Claim

Ford seeks summary judgment on Plaintiffs' "roof claim." Plaintiffs, however, do not specifically plead such a claim in their Second Amended Petition. Rather, Plaintiffs' Petition evinces only a general pleading of products liability and negligence claims.

Nonetheless, Ford, in support of its motion, submits the deposition testimony of Plaintiffs' expert, Joseph L. Burton, M.D. ("Dr. Burton"). Dr. Burton testified that no causal connection exists between the Ford Ranger's roof deformation and the injuries of the decedent, Escobedo.

13

Ford's Motion, Dr. Burton's Deposition at 74. Dr. Burton also stated that he would not testify at trial that a roof defect or supporting structure caused or contributed to Escobedo's injuries. Id. Consequently, to the extent that Plaintiffs attempt to predicate liability on a roof defect based upon Dr. Burton's deposition testimony, such a theory of liability is foreclosed. As noted above, Plaintiffs never responded to Ford's motion, and "[a] summary judgment nonmovant who does not respond to the motion is relegated to [its] unsworn pleadings, which do not constitute summary judgment evidence." Bookman, 945 F.Supp. at 1002. As the record is bereft of any proof that supports any of Plaintiffs' claims with respect to a roof defect, a rational trier of fact could not find for Plaintiffs. No genuine issue for trial therefore exists, and summary judgment in this instance is appropriate.

### 3. Window Claim

Ford seeks summary judgment on Plaintiffs' claim that a window defect contributed or caused Escobedo's injuries. Again, Plaintiffs do not specifically allege such a claim in their Second Amended Petition, and, again, Ford—in support of its motion—relies upon Dr. Burton's deposition testimony.

When Ford's counsel asked Dr. Burton whether it was his "opinion that the passenger's window was completely down during the accident," the following exchange took place:

> A. [Dr. Burton] It would appear that way, unless someone rolled it down at the scene. I know no reason why anyone would have done that. You would have had to get in with it upside down and roll it down. So I assume it probably was down.
>
> Q. ...You're not going to come to court and say that a different type of window would have avoided or reduced or eliminated Mr. Escobedo's injuries, correct?
>
> A. Not if it's down, I certainly couldn't say that.

14

Q.  You're not going to say that at all right?  Is there any evidence anywhere that the window was up?

A.  That's what I'm saying.

Q.  There is not?

A.  I've already told you, I believe the window to have been down.

Q.  Okay.  So you're –

A.  And since I believe it to have been down, I will not come into court and say some other alternative glazing, unless it was fixed in the window and you couldn't move it, would have kept him in the vehicle.

Ford's Motion, Dr. Burton's Deposition at 91.

Accordingly, the court finds that, to the extent Plaintiffs attempt to base liability on a window defect, such a theory of liability is precluded.  Though Plaintiffs' failure to respond does not allow this court to enter a "default" summary judgment, it is permitted to accept as undisputed Ford's evidence, Bookman, 945 F.Supp. at 1002, and, moreover, Plaintiffs' Second Amended Petition is not competent summary judgment evidence.  Id.  Plaintiffs therefore present no proof of a genuine issue of material fact, and summary judgment on this issue is proper.

### 4. Seat Belt Claim

Ford asserts that summary judgment on the issue of a "seat belt claim" should be granted because no admissible evidence demonstrates that Escobedo was wearing a seat belt at the time of the accident.  In what has become a recurring theme, Plaintiffs do not specifically advance such a claim in their Second Amended Petition and have not proffered to this court any evidence to contradict that of Ford.  Ford denies the existence of a defect and preemptively challenges the admission of Dr. Burton's deposition testimony suggesting that Escobedo was wearing his seatbelt

at the time of the accident and that a defect in the Ford Ranger's seat belt caused or contributed to Escobedo's injuries.  Ford contests neither the relevancy of Dr. Burton's testimony nor his qualifications as an expert, but instead focuses on the reliability of this evidence.  Ford argues that Dr. Burton's opinion was based upon the statements of Plaintiffs' counsel and counsel's assistant to Dr. Burton that police officers at the scene of the accident indicated that Escobedo was wearing his seatbelt.  Ford contends that this testimony is hearsay for which Plaintiffs have not laid the proper foundation for its admittance.  Specifically, Ford points to the following portions of Dr. Burton's testimony:

> Q.  Do you know what those statements or information is that they obtained from these investigating officers?
>
> A.  Primarily, having to do with the reason the belt on the right front seat occupant position was cut.  It's my understanding from Mr. Marchan [Plaintiffs' counsel] that the person he had either spoken to or deposed indicated that the only reason that they would cut a belt like that is to remove someone from the restraint after a crash.  And that's the extent of my knowledge about either a statement or deposition that may be....[8]  Ford's Motion, Dr. Burton's Deposition at 20.
>
> *    *    *    *
>
> Q.  Other than the fact that the seat belt is cut today on the passenger's side of the Ford Ranger in which Mr. Escobedo was riding, and there are markings on the D-ring which could be consistent with an occupant wearing a seat belt, are there any other indications or any other facts that support that Mr. Escobedo was wearing his seat belt at the time of this accident?
>
> A.  Well, initially, we were told by Letty [Mr. Marchan's assistant]—Apparently, they had some information, I guess, from the driver, that he had been belted.  But other than that, I personally don't have any information or documented information other than what I've just described to you.

Id. at 23.

---

[8] Neither party included page twenty-one of Dr. Burton's deposition; therefore, the rest of his answer is unknown to this court.

"The admissibility of expert testimony is governed by the same rules, whether at trial or on summary judgment." First United Financial Corp. v. U.S. Fidelity & Guar. Co., 96 F.3d 135, 137 (5th Cir. 1996). Expert witness evidence that does not pass the Daubert test of evidentiary reliability is not competent summary judgment evidence. See Barrett v. Atlantic Richfield Co., 95 F.3d 375, 382-83 (5th Cir. 1996) (citing Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 590, 113 S.Ct. 1245, 122 L.Ed.2d 645 (1993)).

Under Daubert, a district court conducts a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert, 509 U.S. at 591. Various factors may bear on this inquiry, including whether a theory or technique can be or has been tested, has been subjected to peer review, has received general acceptance, and the technique's known or potential error rate. Daubert, 509 U.S. at 591-92. These four factors are non-exclusive and "do not constitute a 'definitive checklist or test.'" Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (quoting Daubert, 509 U.S. at 593). Regardless of the factors considered or the test employed, "the objective is to ensure the reliability and relevance of the expert testimony." Tanner v. Westbrook, 174 F.3d 542, 547 (5th Cir. 1999). Under Rule 703 of the Federal Rules of Evidence, an expert may rely on hearsay as long as the information is the type of information reasonably relied upon by experts in the field.[9] Fed.R.Evid.

---

[9] Rule 703 provides that the facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's

703; Marcel v. Placid Oil, Co., 11 F.3d 563, 567 n.6 (5th Cir. 1994) ("Experts generally may rely on hearsay ... if the data is reliable....").

The court holds that Dr. Burton's testimony in this regard is unreliable and therefore inadmissible. The court notes that Dr. Burton did testify that the fact that the seatbelt was cut constituted forensic evidence supporting the inference that Escobedo was indeed wearing it.[10]

---

opinion substantially outweighs their prejudicial effect.  Fed.R.Evid. 703

[10] The following exchange occurred between Ford's counsel and Dr. Burton:

> Q. You cannot determine whether that liver injury occurred because he [Escobedo] was completely ejected or just partially ejected; is that right?
> A. We'll have to make an assumption that he's either completely or not completely ejected.  I've made –
>
> Q. Can you tell me which one?
>
> A. I've made the assumption that he's only partially ejected.
>
> Q. And what's that assumption based on?
>
> A. Everything that we've covered so far, and only that.  That Mr. Marchan's office indicates, at least, that they believe that he was partially ejected.  They believe that someone cut his belt to take him out.  The cut belt is consistent, based on my investigation of thousands of crashes, with no other reasonable explanation for why it would be cut with someone who was removed from the vehicle after the crash.  That's it.
>
> Q. You said that Mr. Marchan's office has assumed he was partially ejected. What information do you have from Mr. Marchan's office on that topic?
>
> A. Well, I shouldn't have said that.  I told Mr. Marchan, if he had these injuries and he wasn't fully ejected, then he could only get them being partially ejected.  I only assumed, from Mr. Marchan's office, that there was information initially that led them to believe he was belted.
>
> Q. And you haven't been given that information, right?
>
> A. Only to the extent – this officer or law enforcement personnel that he spoke to.

18

Nonetheless, it is unclear whether his mention of the cut seatbelt being forensic evidence was based upon him actually examining the seatbelt or upon Plaintiffs' counsel's statements. Unfortunately, Plaintiffs never filed a response to Ford's motion, thus leaving this court no choice but to accept Ford's characterization of the testimony. While Plaintiffs' failure to respond does not allow the court to enter a "default" summary judgment, this court is permitted to accept as undisputed Ford's evidence. <u>Bookman</u>, 945 F.Supp. at 1002.

Consequently, Dr. Burton's opinion is based on the hearsay statements of Plaintiffs' counsel and is thus inadmissible. The proponent of an expert witness who has relied on facts or data that are otherwise inadmissible in evidence must at least establish that the facts or data are of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject. Fed.R.Evid. 703. Plaintiffs have not established under Rule 703 that their counsel's statements to Dr. Burton are of a type of facts or data reasonably relied upon by experts such as Dr. Burton when forming an opinion or inference upon the issue at hand.

Moreover, in support of its argument, Ford also notes that when Espinoza, the driver of the Ford Ranger at the time of the accident, was asked at his deposition, "[B]ased on your perception at the time [of the accident], was Mr. Escobedo also thrown from the vehicle," he responded, "Yes." Ford's Motion, Espinoza's Deposition at 31. Plaintiffs proffer no proof to counter Espinoza's testimony.

Although all inferences drawn from the evidence are to be resolved in Plaintiffs favor, Plaintiffs may not rest on the mere allegations or denials in their pleadings. <u>Spellman v. Shalala</u>,

---

Other than that, no.

Ford's Motion, Dr. Burton's Deposition at 36-37.

19

1 F.3d 357, 360 (5th Cir. 1993). Rather, once Ford presented a properly supported motion for summary judgment, the burden shifted to Plaintiffs—who bear the burden of proof at trial—to show with "significant probative" evidence that there exists a triable factual issue. <u>Kansa Reinsurance Co., Ltd. v. Congressional Mortgage Corp. of Texas</u>, 20 F.3d 1362, 1371 (5th Cir. 1994). Plaintiffs are required to identify specific evidence in the record and articulate the precise manner in which that evidence supports its claim. <u>Ragas v. Tennessee Gas Pipeline Co.</u>, 136 F.3d 455, 458 (5th Cir. 1998). Rule 56 of the Federal Rules of Civil Procedure does not impose a duty on the court to "sift through the record in search of evidence" to support Plaintiffs' opposition to Ford's summary judgment motion. <u>Id.</u>

Plaintiffs present no proof at all and thus do not satisfy their burden. Consequently, the record, taken as a whole, could not lead a rational trier of fact to find for Plaintiffs. Accordingly, no genuine issue for trial exists, and summary judgment in favor of Ford on this issue is warranted.

### 5. Misrepresentation Claim

Though Ford moved for partial summary judgment on the issue of Plaintiffs' misrepresentation claim in its partial summary judgment motion, Ford again moves for summary judgment. As this court has already addressed this issue and granted Ford's partial summary judgment motion, it need not be revisited.

## IV. CONCLUSION

Based on the foregoing discussion, the court grants Ford's partial summary judgment motions on the issues of a post-sale duty to warn or recall claim, Plaintiffs' misrepresentation claim, and Plaintiffs' punitive damages claim, docket numbers 41, 42, and 63. The court also grants Ford's motion for summary judgment, docket number 64.

20

Signed in Brownsville, Texas, on the 25th day of October, 2004.

Andrew S. Hanen
United States District Judge