IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JAN 1 1 2005

Michael N. Milby
Clerk of Court

| | |
|---|---|
| FEBRIONA VIERA ESCOBEDO § <br> INDIVIDUALLY AND AS § <br> REPRESENTATIVE OF THE ESTATE § <br> OF JOSE ANGEL ESCOBEDO § <br> RODRIGUEZ, DECEASED; AND § <br> LUIS ALBERTO ESCOBEDO VIERA § <br> AND JOSE VIERA ESCOBEDO § <br> § <br> VS. § <br> § <br> FORD MOTOR COMPANY, § <br> MICHELIN NORTH AMERICA, INC. § <br> AND WALMART STORES, INC. § <br> D/B/A SAM'S WHOLSALE CLUB § | CIVIL ACTION <br><br> NO. B-03-135 |

**PLAINTIFFS' MOTION TO SET ASIDE AND WITHDRAW
COURT'S MEMORANDUM OPINIONS AND ORDERS
OF OCTOBER 22, 2004 AND OCTOBER 25, 2004**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, FEBRIONA VIERA ESCOBEDO INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF JOSE ANGEL ESCOBEDO, ET AL, plaintiffs, and file this their Motion to Withdraw Memorandum Opinions and Orders of October 22, 2004 and October 25, 2004, respectively, and in support thereof would respectfully show the court as follows:

I.

**Procedural and Factual Background**

Defendant Ford Motor Company filed Motion for Summary Judgment on June 10, 2004 and August 25, 2004. Wal-Mart Stores, Inc. d/b/a Sam's Wholesale Club's also file a Motion for Summary Judgment or Alternative Motion to Apply Substantive Law of Mexico. Said motions were pending as of September 14, 2004, when all parties to this proceeding agreed to settle the case. *See Exhibit "A" at p. 2-4 (true and correct copy of transcript of Nov. 2, 2004 hearing before this court); Exhibit "B" (true and correct copy of email sent form office of Ford Motor Company's counsel to Plaintiff's counsel's office reflecting settlement); Exhibit "C" (true and correct copy of cover letter from*

*counsel for Michelin Tires referencing enclosed settlement documents); Exhibit "D" (affidavit or Ray. R. Marchan).*

The parties failed, however, to file the settlement documents, and in so doing, failed to notify the Court that there remained no disputed issue left for the Court to resolve. *Ex. "A" at p. 2-4*. Lacking information that the above-referenced dispute was resolved, the Court issued Memorandum Opinions and Orders on October 25, 2005 (re Wal-Mart's Motion) and on October 25, 2005 (re Ford's Motions).

Settlement documents, including a complete Release, Indemnity, Confidentiality, Compromise and Settlement Agreement, Agreed Stipulation of Dismissal, and Order of Dismissal were being exchanged beginning October 8, 2004, but had not been fully executed by either October 22, 2004 or October 25, 2004.

## II.

### Counsel Failed to Inform Court of Settlements Which Mooted the Motions

When the court issued its orders, the parties notified the court of the settlement. The Court immediately set a show cause hearing for all counsel to explain why the court had not been notified. At the hearing, the parties explained that their failure to inform the court was due to inadvertence, rather than any conscious decision.

> Counsel for Plaintiffs:
>
> We did settle. And the deal is that we're probably all responsible for not filing a simple one piece of paper advising the Court of notice of settlement.

*Ex. "A" at p. 2*

> Counsel for Ford:
>
> Yes, your Honor, we settled.
> ...
> It's out fault, your Honor, and we apologize... And frankly, it just slipped all our respective minds, and we should have known better.

*Id. at p. 2 & 3.*

> Counsel for WalMart/Michelin:

2

> Your Honor, I don't have anything to add. I thought we sent settlement documents to Mr. Marchan, and I thought my folks would have followed up with it, and I, frankly, left it up to a lady in my office who does all the settlement papers.

**Id. at p. 3-4.**

The Court admonished the parties concerning the necessity to apprise the Court of any such significant events and advised each attorney not to let something like this happen again.

During the following weeks, final settlement papers were exchanged between the parties. Now that all documents have been signed, Plaintiffs are also filing on this date a Motion to Dismiss the case. As a housecleaning matter, Plaintiffs are asking the Court to set aside the Orders of October 22 and 25, 2004.

### III.

### Court has authority to withdraw opinion

The Court's disposition of the motion for summary judgment resulted from the mistaken belief that the parties still had between them a live controversy. The Court has not yet prepared and entered final judgment in this case, as prescribed by FED.R.CIV.P. 58(a). Under that rule, a judgment is effective only ... when entered as provided by [FED.R.CIV.P.] 79(a)."

As long as a district (or an appellate) court has jurisdiction over the case, then (in absence of prohibition by statute or rule), it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient. *United States v. Jerry*, 487 F.2d 600, 604-05 (3d Cir. 1973); Melancon v. Texaco, Inc., 659 F.2d 551, 553 (5th Cir. 1980); *United States v. Bryson*, 16 F.R.D. 431, 435 (N.D.Cal.1954), *aff'd.*, 238 F.2d 657 (9th Cir. 1956), 243 F.2d 837 (9th Cir. 1957), *cert. denied*, 355 U.S. 817, 78 S.Ct. 20, 2 L.Ed.2d 34 (1957); *see also* decisions cited at 60 C.J.S. Motions & Orders, s

62(1) (1969) and at 56 Am.Jur.2d Motions & Orders, s 42 (1971). Accordingly, the order has not become final and this Court still has jurisdiction over this case.[1]

As the Court was informed at the "show cause" hearing, the Court had drafted orders on Wal-Mart's Motion for Summary Judgment and Ford's Motion for Summary Judgment because counsel failed to inform the Court that the case had already settled. The court mistakenly believed that the parties were still litigating their disputes.

It is the practice of Plaintiffs' counsel to promptly inform the Court of any settlements, and the failure to do so in this case was an inadvertent aberration from normal practice, it was not the result of conscious indifference. *See Exhibit "D" (affidavit of Ray M. Marchan).*

### IV.

### Ford and WalMart Do Not Dispute That Case Settled Before Court Ruled

Ford and WalMart do not dispute that the Plaintiffs reached a settlement agreement with them in early September. The Court's order was issued during the time when the parties were exchanging drafts of the documents memorializing such agreements. WalMart and Michelin are unopposed to the relief sought herein. Ford is unwilling, however, to agree to set aside the order.

### V.

### Order Resulting From Mistake Should be Set Aside

A comparable situation was addressed in *Davis v. Magnolia Lady, Inc.*, 178 F.R.D. 473 (1998). In that case, the parties settled a case that disposed other controversy between them but the trial was not aware of the settlement and subsequently issued an order on the same date granting a motion to dismiss. *Id.* at p. 473-74. The Plaintiffs in

---

[1] Apart from its continuing jurisdiction to amend, modify, or withdraw its own orders, this Court has authority Federal Rule of Civil Procedure 60 permits the court to correct "clerical mistakes in judgments, orders... arising from oversight or omission", as well as other types of orders affected by mistake, inadvertence, surprise, or excusable neglect... or any other reason justifying relief. The motion must be made within a reasonable time after the order but no more than one year after the order was entered or taken. *Id.*

that case asked the Court to set aside the order of dismissal that had followed the settlement. *Id.* The district court noted that it retained jurisdiction over the case, and had authority under FED.R.CIV.P. 60(b0 to set aside its order. It noted

> The undersigned would most certainly prefer to be kept informed regarding the status of any settlement negotiations in order to avoid situations such as the new at bar... In order to encourage settlement of all pending claims, the parties must be able to rely on the finality of settlement. Therefore, the Court can say with all sincerity that had it been informed of the settlement agreement prior to the entry of final judgment by the clerk, the undersigned would have directed the clerk of this court not to docket this courts's [] opinion and order.

*Id.* at p. 475The United States Supreme Court has also noted congress has not provided guidelines as to what constitutes excusable neglect, and noted that the determination is "at bottom line an equitable one, taking into account all relevant circumstances surrounding the party's omission." *Pioneer Ins. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 391 (1993).

VI.

**Summary Judgment Orders Likely To Have Inadvertent Consequences**

It has come to the attention of Plaintiffs' counsel that the ramifications of the orders extend beyond this case. It has come to Plaintiffs' attention that Ford Motor Company is using the October 25, 2004 Order in other cases. *See Ex. "D".*

As the Court is aware, Ford's Motion was not responded to on the merits due to the inadvertence of counsel. The Court did not have the benefit of a response on the merits when it drafted the order. Dr. Burton, whose testimony has been admitted in case throughout the United States, is negatively impacted by this Order, due to no fault of his own. Other litigants relying on the legal theories alleged in this case, or upon Dr. Burton's services, may be negatively impacted by the Court's order, as Ford is using the Court's order in other proceedings as res judicata this issues addressed in their motions.

While Plaintiffs' counsel admittedly bare responsibility for the Court's order, Dr. Burton and the other litigants should not be prejudiced by the mistakes made in this

case. Any insinuation that this Court's order, drafted without the benefit of a response, should serve as res judicata as to the reliability of his opinions is improper.

## VII.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that this Court recognize its inherent power to set aside the Orders dated October 22 and 25, 2004, respectively. Plaintiffs' alternatively request any other relief from the orders which the Court might consider in the interest of justice and equity.

Respectfully submitted this the _11_ day of January, 2005.

> WATTS LAW FIRM, L.L.P.
> 1926 E. Elizabeth
> Brownsville, Texas 78520
> (956) 544-0500
> (956) 541-0255 FAX
>
> Ray R. Marchan
> State Bar No. 12969050
> Federal I.D. No. 9522
> *Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this the \_\_\_*11*\_\_\_ day of January, 2005, a true and correct copy of the foregoing instrument was forwarded to opposing counsel, via fax, by hand-delivery or by U.S. Mail.

*/s/ Ray R. Marchan*
Ray R. Marchan

## CERTIFICATE OF CONFERENCE

On Friday, January 7, 2005, a copy of the foregoing motion was faxed to all counsel in this case seeking their position to plaintiffs' motion. Counsel for defendants responded as follows

Mr. Thomas M. Buillion, III, attorney for Defendant Michelin North America, Inc. is unopposed to the relief sought herein.

Jaime Drabek, attorney for Walmart Stores, Inc. d/b/a Sam's Wholesale Club, Deferred to Mr. Buillion's position, which is unopposed.

Mr. Jaime Saenz, attorney for Defendant Ford Motor Company. Mr. Saenz is opposed to the relief sought herein.

Respectfully submitted this the _____ day of January, 2005.

````
                                    WATTS LAW FIRM, L.L.P.
                                    1926 E. Elizabeth
                                    Brownsville, Texas  78520
                                    (956) 544-0500
                                    (956) 541-0255  FAX


                                    _____
                                    Ray R. Marchan
                                    State Bar No. 12969050
                                    Federal I.D. No. 9522
                                    *Attorney for Plaintiffs*
````

```
 1                    IN THE UNITED STATES DISTRICT COURT
                         SOUTHERN DISTRICT OF TEXAS
 2                          BROWNSVILLE DIVISION

 3   ────────────────────────────────
                                    )
     FEBRIONA VIERA ESCOBEDO         )
 4                                  )
                                    ) CIVIL ACTION NO.
 5   VS.                            ) B-03-135
                                    )
 6   FORD MOTOR COMPANY, ET AL      )
                                    )
 7   ────────────────────────────────

 8                       SETTLEMENT CONFERENCE
                  BEFORE THE HONORABLE ANDREW S. HANEN
 9                        NOVEMBER 2, 2004

10   APPEARANCES:

11   For the Plaintiff:          MR. RAY R. MARCHAN
                                 Watts Law Firm
12                               1926 E. Elizabeth
                                 Brownsville, Texas   78520
13
     For Defendant Ford:         MR. JAIME A. SAENZ
14                               Rodriguez, Colvin, Chaney & Saenz
                                 1201 E. Van Buren Street
15                               Brownsville, Texas   78522

16
     For Defendant Wal-Mart:     MR. JAIME A. DRABEK
17                               Drabek & Associates
                                 1720 E. Harrison, Suite B
18                               Harlingen, Texas   78550

19   For Deft. Michelin:         MR. THOMAS M. BULLION III
                                 Brown McCarroll
20                               111 Congress Ave., Suite 1400
                                 Austin, Texas   78701
21

22
     Transcribed by:             BARBARA BARNARD
23                               Official Court Reporter
                                 600 E. Harrison, Box 301
24                               Brownsville, Texas   78520
                                 (956)548-2591
25
```

**CERTIFIED COPY**

Exhibit "A"

```
 1            THE COURT:  All right.  Gentlemen, be seated.
 2       Okay.  We're here on CA B-03-135, Escobedo versus Ford, et
 3  al.  Now, have you guys settled?  What's the deal?
 4            MR. MARCHAN:  Yes, Your Honor, we did settle.  And the
 5  deal is is that we're probably all responsible for not filing a
 6  simple one piece of paper advising the court of notice of
 7  settlement.  And I'm sure on behalf of all of us, we regret not
 8  filing that one simple piece of paper.
 9            THE COURT:  Well, did everybody settle?
10            MR. MARCHAN:  We did.
11            THE COURT:  I mean, all three defendants?
12            MR. SAENZ:  Yes, Your Honor, we settled.
13            THE COURT:  Well, that kind of makes me mad.  I just
14  want y'all to know this.  I mean, we spent, you know, two of the
15  last three weeks working on motions for summary judgment that we
16  wouldn't have worked on.  I mean, we have other things to do.
17  And a simple letter to us saying we would have settled -- we've
18  settled.  Give us, you know, 60 days to get a judgment, I mean,
19  you know, that's, one, common courtesy; but, two, it keeps us
20  from having to do a lot of work, and it's work we could have
21  spent on something else.
22       I mean, and the other thing it does is the next time we have
23  a motion, next time Ford files a motion in my court, why am I
24  going to want to look at it, you know, because I think, well,
25  maybe you've settled.  Why should I even rule on it.  You know,
```

1  I mean, it's just -- you know, I can't tell you how mad I am
2  about this.
3         MR. SAENZ:  It's our fault, Your Honor, and we
4  apologize.  We had mediated this case along with others about
5  six weeks ago, and we came up with an agreement in principle to
6  settle four different cases, this one including, and we simply
7  didn't advise the court.  There were some logistics that we
8  still not have ironed out, but a simple letter would have
9  alleviated the problem.  I should have known about it too.  I
10 worked in this system, and I know how it works when you're
11 getting ready for pretrials.  And, frankly, it just slipped all
12 our respective minds, and we should have known better.
13        THE COURT:  I mean, we were, you know, trying to figure
14 out why we didn't have responses to the summary judgment
15 motions, and obviously our best guess was that since Michelin
16 hadn't moved for one, that you had decided it was just a tire
17 case, and you didn't mind Ford and Wal-Mart slipping out the
18 back door.
19        MR. DRABEK:  Judge, just so the record is clear,
20 Michelin took over Wal-Mart's defense back in September, so I
21 wasn't even involved in any of this, and so -- but I was told to
22 be here; and by gum it, I'm here.
23        MR. BULLION:  Your Honor, I don't really have anything
24 to add.  I thought we had sent settlement documents to
25 Mr. Marchan, and I thought my folks would have followed up with

```
 1    it, and I, frankly, left it up to a lady in my office who does
 2    all the settlement papers.  And I have made sure that it won't
 3    happen in the future, I hope.
 4            THE COURT:  Well, it cost you a trip down here.
 5            MR. BULLION:  I understand that.
 6            THE COURT:  Let me ask one other thing.  Do we have kids
 7    in this case?
 8            MR. MARCHAN:  No, sir.
 9            THE COURT:  Because we don't have an ad litem.  I'm
10    looking at my little synopsis here.  It says "et al" for
11    plaintiffs.
12            MR. SAENZ:  No minor children, Your Honor.
13            MR. MARCHAN:  They're all adults.
14            MR. SAENZ:  There are three adult children of the
15    decedent, and so that won't necessitate a guardian ad litem
16    being appointed.
17            THE COURT:  All right. When am I going to get some kind
18    of judgment or something out of this?
19            MR. MARCHAN:  I did receive the documents from Michelin
20    already.  Mr. Saenz and I actually talked about documents, was
21    it last week during depositions in another case?  And he's
22    preparing to send them over.  We've had an initial conference
23    with the clients through our referring attorney's office,
24    Mr. Zavaletta.  And as soon as the other paper is ready, we're
25    going to show up with everybody at one time at one place to get
```

1  them executed.
2          THE COURT: Well, you'll have to find a day when he's
3  not running the port.
4      Why don't we try to -- try to get me some kind of judgment
5  by December 17th. That's six week from now.
6          MR. MARCHAN: That's more than reasonable.
7          MR. SAENZ: That won't be a problem, Your Honor. We've
8  settled many cases with Mr. Watts' office and Mr. Marchan's.
9  I'm sure we can get it done in the next two weeks.
10         THE COURT: All right. And just in the future, I mean,
11 I'm as user friendly a federal judge as you're ever going to
12 find, and this one pushed me beyond the limits because
13 literally, I mean, it's -- my law clerks work on these. They
14 give up weekends to come in and make sure. Especially when
15 we're looking at a trial setting, we're trying to get everything
16 streamlined for trial. And, you know, Michele worked hard on
17 this, and we spent a lot of time on this that we could have
18 spent on -- I mean, you know, we have a death penalty case we
19 need to be working on, which actually, in a lot of people's
20 minds, would be a lot more important than this, but we set it
21 aside to do this.
22     All right. Is there anything else we can do to make sure
23 this gets taken care of post haste?
24         MR. MARCHAN: I believe this is a very effective way to
25 make sure everything gets done post haste, Judge.

```
 1          THE COURT:  All right.  And let me emphasize to y'all,
 2   because y'all are going to be back in my courtroom, all four of
 3   you.  One, not to let this happen again; but, two, absolutely
 4   respond to motions.  Now, we went through those motions kind of
 5   with a fine-toothed comb.  But I'll have to tell you,
 6   Mr. Marchan, my knee jerk reaction was just to say, "Hey, he
 7   didn't respond to it.  Grant it."
 8          MR. MARCHAN:  Judge -- and I always understand that
 9   that's the course that any federal judge can take, and it was
10   just because of the resolution that there wasn't a response.
11          THE COURT:  And I understand your reasoning for not
12   responding to it now that I've heard it, but that was just a --
13   just a reminder.
14          MR. MARCHAN:  Yes, sir.
15          THE COURT:  All right. Okay.  Well, get me some
16   documents by December 17th, and we'll stand adjourned.
17          MR. MARCHAN:  Yes, Your Honor.
18          MR. SAENZ:  Thank you, Your Honor.
19                              * * *
20       (End of requested transcript)
21
22
23
24
25
```

1                              -oOo-

2       I certify that the foregoing is a correct transcript from

3  the record of proceedings in the above matter.

4

5  Date:   January 10, 2005

6

7

8                                    _____
                                     Signature of Court Reporter
                                     Barbara Barnard
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Mon, Jan 10, 2005 4:22 PM

**Subject: Escobedo v. Ford**
**Date:** Tuesday, October 5, 2004 11:21 AM
**From:** Maria Quintero Salvo <maria.salvo@rcclaw.com>
**Reply-To:** Maria Quintero Salvo <maria.salvo@rcclaw.com>
**To:** Letty Fierros <lfierros@mail.wattslawfirm.com>

Dear Letty, I know that this case is settled but I do to have the amount Ford settled for. if you could provide that info and please also send me checkwriting instructions in writing, along with the appropriate tax ID number; If you prefer to structure part or all of the funds, please let me know and we will get the right people in touch with in order to finalize things.

If you have any questions, please feel free to contact me.

--
Maria Quintero-Salvo
Rodriguez Colvin, Chaney & Saenz LLP
4900 A-2 North 10th St.
McAllen, TX 78504
956-686-1287
Fax:956-686-6197
Email: maria.salvo@rcclaw.com


CONFIDENTIALITY NOTICE: This email transmission contains confidential information which is legally privileged. The information is intended only for the use of the recipient named below. If you are not the recipient indicated in the salutation of this email, you have received this email in error. If so, please do not read it; please return it to us with an indication that it was misdirected and delete the email you received from your system. You are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this email,s information is without permission and violates all applicable privileges.

Page 1 of 1

Exhibit "B"



**Brown McCarroll**
L.L.P.

111 Congress Avenue, Suite 1400, Austin, Texas 78701-4043
512-472-5456  fax 512-479-1101

Julie H. Albright
Email:jalbright@mailbmc.com

Writer's Direct No. (512) 479-9792

October 8, 2004

**VIA FACSIMILE (361) 887-0055**
Ray R. Marchan
Watts Law Firm, L.L.P.
555 N. Carancahua, Suite 1400
Corpus Christi, Texas 78478

**VIA FACSIMILE (956) 428-4880**
Jaime A. Drabek
Drabek & Associates
1720 E. Harrison, Suite B
Harlingen, Texas 78550

RE: Febriona Viera Escobedo, et al v. Ford Motor Company, et al.

Dear Counsel:

Enclosed are the following documents related to the settlement reached among our respective clients:

1. Complete Release, Indemnity, Confidentiality, Compromise and Settlement Agreement;

2. Agreed Stipulation for Dismissal; and

3. Order of Dismissal.

When you have had an opportunity to review these and discuss them with your clients, please call me with any changes you believe necessary.

Sincerely,

*Julie H. Albright*
Julie H. Albright
by L. Finch
with permission

JHA:lmf
Enclosures

AUS:2508300.1
32302.101

Austin • Dallas • Houston • Longview • El Paso

Exhibit "C"

STATE OF TEXAS )
)
COUNTY OF CAMERON )

On this the \_\_11\_\_ day of January, 2005, came on before me the undersigned authority, personally appeared RAY R. MARCHAN, who after being duly sworn upon his oath, stated and deposed to his personal knowledge as follows:

"My name is Ray R. Marchan, and I am lead counsel for Plaintiffs in the case styled *Febriona Viera Escobedo et al. v. Ford Motor Company, Michelin North America Inc., and Walmart Stores, Inc. d/b/a/ Sam's Wholesale Club*. Civil No. B-03-135, now pending in the U.S. Southern Dist. of Texas, Brownsville Division.

On September 9, 2004, my firm negotiated a tentative settlement of all claims against Ford Motor Company for a fixed amount. That agreement with Ford, as well as Wal Mart and Michelin, was finalized by September 14, 2004, after discussing the terms with our clients and our co-counsel. Although no documents reflecting the terms of the settlement were immediately drafted a the time, it is the longstanding practice of my firm to settle claims with Ford Motor Company, then memorialize those agreements in writing with appropriate releases, confidentiality agreements and the like.

At the time the Plaintiffs underlying claims against Ford Motor Company were resolved, Ford had two Motions for Summary Judgment pending. Plaintiffs' response was due to be filed on or about September 14, 2004. Because all claims were settled, Plaintiffs did not proceed with finalizing or filing any Response to Ford's motion. Had the case not been resolved, Plaintiffs undoubtedly would have filed a Response in this case

It is my ordinary practice to immediately ensure that the presiding court is notified of any settlements in my cases. It would have been my customary practice to inform the Court that Plaintiffs had reached a settlement with Ford Motor Company and the other Defendants by September 14, 2004, so that WalMart's and Ford's Motions for Summary Judgment were moot. This did not happen, however, in this case. I neglected to do so, and I erroneously assumed that the court had been so notified. Opposing counsel also neglected to so inform the Court.

On October 22, 2004 and 25, 2004, the Court authored memorandum opinions and orders. The parties then informed the Court that the claims had been resolved. The Court was rightfully concerned, because it had not previously been notified and had worked upon and authored an order under the erroneous assumption that (a) Plaintiff's intentionally did not respond to the Motion, and (b) the claims between Plaintiffs and Defendants were still pending Counsel for all parties explained as much to the Court at the "show cause" hearing on November 2, 2004.

Exhibit "D"

It has come to my attention that Ford Motor Company is using this Court's order in other cases against this firm claiming its applicability as res judicata and/or authoritative which is potentially misleading. In product liability litigation, parties often use the same experts in several cases. Based on Ford's use of the Court order to date, and ford's unwillingness to agree with our Motion to Withdraw the Orders, it appears Ford intends to use this Court's order against Dr.. Burton in other cases."

Further Afiant sayeth not.

_____
RAY R. MARCHAN

SWORN TO AND SUBSCRIBED on this the __11__ day of January, 2005.

_____
NOTARY PUBLIC, STATE OF TEXAS



LETICIA FIERROS-GARZA
Notary Public, State of Texas
My Commission Expires
July 26, 2008